United States District Court
Southern District of Texas
**ENTERED**
August 06, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|   Plaintiff | § | |
| | § | |
| v. | § | CRIMINAL NO. 2:14-876-1 |
| | § | |
| ROMAN FELAN, | § | |
|   Defendant. | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant Roman Felan's Motion for Compassionate Release Under 18 U.S.C. 3582(c) and Brief in Support (D.E. 90, 95), to which the Government has responded (D.E. 96).

## I. BACKGROUND

In June 2014, a cooperating informant (CI) told agents with the Department of Homeland Security Investigations that one of the main suppliers of methamphetamine to the Corpus Christi area was an individual from Houston known as Roman Felan. Over the next two months, the CI made a number of controlled buys of methamphetamine from Defendant. In December 2014, Defendant and his son-in-law were charged with conspiracy to possess with intent to distribute 243.52 grams of methamphetamine and four substantive counts each of possession with intent to distribute methamphetamine. Defendant pled guilty to the conspiracy charge. The Presentence Investigation Report calculated his base offense level at 32 based on 243.52 grams of methamphetamine, and two levels were added because he was the organizer, leader, manager, or supervisor of criminal activity. He had eight criminal history points, resulting in a criminal history category of IV.[1] After acceptance of responsibility, his advisory sentencing range was

---

1. Defendant's scored criminal history included convictions for delivery of cocaine and being a felon in possession of a firearm. His unscored history dated back to 1981 and included convictions for burglary of a vehicle,

1

151–188 months' imprisonment. The Court granted Defendant's motion for a downward variance and sentenced him to 127 months.

Defendant has served 67 months (53%) of his sentence and has a projected release date of January 26, 2024. Citing 18 U.S.C. § 3582(c), he now moves the Court to reduce his sentence to time served because: (1) he was given an unusually long sentence under a "peculiar" statutory provision; (2) he is in serious ill health and fears contracting COVID-19 while in prison; and (3) he has compiled a remarkable record of rehabilitation showing that, if released, he is no danger to the public. Defendant filed an administrative request for compassionate release with the BOP due to his health concerns, but the warden denied his request.

## II. LEGAL STANDARD

The statute, 18 U.S.C. § 3582(c)(1)(A), authorizes a court to reduce a defendant's sentence under a limited number of circumstances:

> **(c) Modification of an Imposed Term of Imprisonment.—**The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > (i) *extraordinary and compelling reasons warrant such a reduction . . .* and that such a reduction is consistent

---

criminally negligent homicide, possession of marijuana (two convictions), delivery of cocaine, and possession of cocaine.

2

>>with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

The applicable United States Sentencing Commission policy statement provides that extraordinary and compelling reasons for early release exist where:

> **(A) Medical Condition of the Defendant.—**
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>   (I) suffering from a serious physical or medical condition,
>   (II) suffering from a serious functional or cognitive impairment, or
>   (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(B) Age of the Defendant. –**
>
> The defendant is (i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;
>
> **(C) Family Circumstances. –**
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons. –**

As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13(1)(A), Application Note 1.

Even if "extraordinary and compelling reasons" for early release exist, the Guidelines' policy statements provide for a reduction in sentence only if a defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. §3142(g)." U.S.S.G. § 1B1.13(2). Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction, including whether the offense is a crime of violence, or involves a minor victim, a controlled substance, or a firearm, explosive, or destructive device; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

Finally, the Court must consider whether a reduction is consistent with the applicable section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. The applicable statutory factors include, among others: the defendant's history and characteristics; the nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; the need to deter criminal conduct and protect the public from further crimes of the defendant; the need to provide the defendant with, among other things, any needed medical treatment; and the various kinds of sentences available. 18 U.S.C. §§ 3553(a)(1)-(7).

With respect to motions for compassionate release based on COVID-19:

A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances

>faced by the defendant. Hence, a prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak. . . . [T]he rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person.

*United States v. Koons*, 2020 WL 1940570, at *4 & n.8 (W.D. La. Apr. 21, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

"In general, the defendant has the burden to show circumstances meeting the test for compassionate release." *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019).

**III. ANALYSIS**

    **A. Unusually Long Sentence**

Defendant first claims that his sentence should be reduced because the statutory mandatory minimum 10-year sentence for trafficking such a small quantity of methamphetamine is "unusually long" and "too punitive." Citing the First Step Act of 2018 and the Fair Sentencing Act of 2010, he argues that "Congress routinely passes law[s] related to sentencing concerning issues of the time, only to revisit the issue later and modify the original law." D.E. 90, p. 15. According to Defendant, because methamphetamine is no longer "an unusual and rare drug," "[t]he exact same Draconian issues that drove the changes in the law for crack will be soon applied to methamphetamine." *Id.*, p. 16.

Should Congress choose to lower the mandatory minimum sentence for trafficking methamphetamine in the future and make this change retroactively applicable, Defendant may move for a sentence reduction at that time.[2] Until then, the Court has no authority to grant relief.

---

    2. Defendant may also move for a sentence reduction should the Sentencing Commission retroactively lower the base offense level for methamphetamine in the future. *See* 18 U.S.C. § 3582(c)(2) (a court may reduce a

5

### B. Medical Conditions and COVID-19

Defendant is 55 years old. His medical records confirm that he suffers from hyperlipidemia; hypertension; esophageal reflux; type 2 diabetes mellitus with diabetic neuropathy and retinopathy; unspecified cerebrovascular disease; subluxation of wrist and hand; and reduced vision. He also recently suffered a series of strokes and claims that he was left with reduced fine motor skills, reduced control over sections of his body, tremors, and speech impediments, and that he must be transported by wheelchair for anything beyond just short distances. Defendant maintains that his "growing and various illnesses" provide an extraordinary and compelling reason for release, given the current COVID-19 pandemic. According to the Centers for Disease Control and Prevention, people of any age with type 2 diabetes or who are morbidly obese are at an increased risk of severe illness from COVID-19, and people with hypertension or cerebrovascular disease might be at an increased risk. *People with Certain Medical Conditions*, CDC (July 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

The Government responds that Defendant's COVID-19 concerns do not qualify as extraordinary and compelling, and the BOP is successfully employing practices to keep the prison population at low risk for COVID-19 spread. According to the BOP, there is currently one inmate infected at FCI Danbury. Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Aug. 3, 2020). The Government further argues that Defendant's violent and substantial criminal history and gang affiliations demonstrate that he is a danger to the safety of the community if released.

---

term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission").

Defendant is not elderly, nor is he suffering from a terminal illness or other serious medical condition that substantially diminishes his ability to perform self-care in prison.[3] While he is at a higher risk for severe illness should he contract COVID-19 while incarcerated, the Court finds that this risk is outweighed by the danger to the safety of the community if he is released. Defendant readily admits that he:

> was tried and convicted of shooting and killing one rival gang member and shooting two others. Over the next seven or eight years, [Defendant] was convicted for possession and delivery of marijuana, money laundering and cocaine trafficking several times. The most serious involved selling a large amount of cocaine to an undercover police officer and when the police attempted to take [him] into custody, he fled and engaged in a gun battle with police. At aged 26, he was sentenced to 20 years in prison for trafficking cocaine and the attempted capital murder charge was dropped.
>
> Once in prison, [his] prowess for gang life served him well, as he quickly became a "shot caller". He was a major force in the rise in power of Raza Unida in Texas prisons. . . . [Defendant] became a Sargent at Arms, then a Lieutenant, Captain and eventually the president.

Def. Br. in Support, D.E. 95, pp. 6–7.

Given Defendant's lifelong criminal history, the Court is not swayed by his assertion that he is no longer a danger to society because he has since dropped out of Raza Unida. The Court further finds that the § 3553(a) factors, as considered in the specific context of the facts of this case, do not warrant a reduction in sentence. Specifically, releasing Defendant would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment, nor would it deter criminal conduct or protect the public from further crimes.

**C. Post-sentencing Rehabilitation**

Finally, Defendant states that he has "compiled an extraordinary record of rehabilitation," including "sterling prison conduct." D.E. 90, p. 2. He says that he also mentors other younger

---

3. According to the warden's response to Defendant's administrative request for compassionate release, Defendant does not have a debilitating condition, his medical records do not indicate that he is unable to manage his self-carry medication or daily living activities, and he is not confined to a bed or wheelchair more than 50% of waking hours. D.E. 92-2.

7

prisoners, who have "remarked on his character and abilities," and "[a]t one point, his intellect and strong and charismatic nature lead him to a position of leadership." *Id.* at 2, 17.

While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone. *See* U.S.S.G. § 1B1.10, app. n.1(B)(iii). As set forth *supra*, Defendant has failed to demonstrate that he qualifies for a sentence reduction under the limited circumstances set forth in § 3582(c). Moreover, the "position of leadership" to which Defendant alludes—president of a violent prison gang—is not indicative of rehabilitation.

## IV. REQUEST FOR TRANSFER

In the alternative, Defendant moves the Court to order his release to a halfway house facility or a transfer to a full-time medical facility, such as the Federal Medical Center in Fort Worth, Texas. The BOP has the exclusive authority to "designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). This designation "is not reviewable by any court." *Id.* As such, this Court does not have the authority to order that Defendant be transferred to a halfway house or medical facility.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release Under 18 U.S.C. 3582(c) (D.E. 90) is **DENIED**.

It is so **ORDERED** this 5th day of August, 2020.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE